The next case on the docket is number 5-20-0036, Payroll Services et al. v. Haag. Arguing for the appellant, Payroll Services et al. is Courtney Cox. Arguing for the appreliee, Kimberlyn Haag, is Don Prosser. Each side will have up to 20 minutes for their argument. The appellant will also have 5 minutes for rebuttal. You will see the digital timekeeping device on my screen. When time has expired, I will bang the gavel. Finally, please remember no photographs. Only the clerk of the court is permitted to record these proceedings today. I have one question for the clerk. Should we wait for the audience to come up on the screen? I don't see it. No, it's not necessary. Okay. In this case, is the appellant ready to proceed? Yes, Your Honor. Let's go ahead. Thank you. May it please the court. My name is Courtney Cox. I represent Payroll Services and also Teresa Kutuby. Payroll Services by Extra Health is a corporation which is owned 75% by Teresa Kutuby and 25% by Kimberlyn Haag. In addition to being a part owner of the business, Ms. Haag was also an employee of the company until her termination on March 28, 2014. That termination triggered section five of the corporation's shareholder agreement, which provided that in the event of a termination of employment of a shareholder, the corporation would have the option to purchase all of the shares of the terminated employee slash shareholder. The amount to be paid by the corporation for those shares is to be determined by a mutually agreed upon business valuation company. If the parties are unable to agree upon a valuation, section 10 provides that the valuation shall be the average of the valuation provided by the corporation and the valuation provided by the shareholder whose shares are being sold.   valuation company. In this case, both shareholders agreed to obtain a business valuation from the Anders CPA firm with the condition that if Ms. Haag did not agree with the Anders valuation, she would obtain her own valuation from Kemper CPA. The Anders valuation came back showing the value of Ms. Haag's 25% as zero. Ms. Haag disagreed with that valuation and sought her own valuation from Kim Aaron at Kemper CPA. Mr. Cox, I saw that in your brief that you indicated it was after they got your valuation, that they decided to do their own and they dispute that fact that they had already indicated to your client that they were going to go ahead and get their own, which, which is true. Uh, it's somewhere in between your honor. Uh, they agreed. Um, and I have in my brief, the, uh, the actual email from, uh, Ms. Haag's counsel, they say we agree with the Anders performing the valuation, but we reserved the right to get our own valuation from Kemper if we disagree with it. So. They say they wrote a letter, um, uh, I think in may, before the July valuation that they were going to go ahead and have Kemper do it. I may be wrong on the months, but well, uh, on page six of my brief, we have the actual, uh, communication from Rhett Barkey of Ms. Haag's attorney, uh, in which he indicates he's spoken to his client about the valuation. Uh,   that the, uh, the client would like to proceed with Anders performing the valuation, uh, in, in us receiving that information. And if the numbers are not agreeable, then my client will have her own valuation. Uh, most likely Kemper, he said in the, in the communication. So, uh, they agreed to have the, uh, Anders perform it, but reserved the right to disagree with it and get their own, which they did. Um, you know, a lot of this case depends on the, um, um, issue of what is a business valuation, right? That's correct. And, um, I don't see the word business valuation in the shareholder agreement. I see the word valuation, but it seems that you are both arguing that business valuation has a bit. It's actually business engagement has a very specific meaning under, um, certain standards, right? Yes, Your Honor. So I guess my question is why, why do you keep using the term business valuation when the section 10 of the shareholder agreement is just valuation. You're correct. Your Honor does say valuation. And it said the valuation should be performed by a business valuation company. And from that, we ascertain that the valuation itself would be, uh, a valuation within a business setting. And not a calculation analysis, which was something very different that miss, uh, Aaron recognized. She she's, she recognized that whether it's called a business valuation or it's called evaluation, what she did initially was neither. It was a calculation analysis, which she identified as not being a valuation at all, whether it's a business or otherwise, uh, rather it was something less than, uh, a valuation analysis. And the, um, parties seem to rely. Is there any dispute between the parties that the standards for valuation services or the AI CPA is applicable in this case? Cause that also is not written into the agreement. I don't know that there is an agreement one way or the other. I know we have referred to them as, uh, as some reference, uh, in the case as to what evaluation is. But in this case, the trial court relied upon the definition. Evaluation supplied by Ms. Hicks expert herself, miss Aaron. She gave the definition, uh, of what evaluation is. And in the court's first order, the court recognized that the calculation analysis provided initially. Uh, did not meet that definition. Likewise, what is later called a, an evaluation analysis by, uh, miss Aaron. Likewise, does not meet her own definition of evaluation. So I think the parties. To a great extent and the court in this case have relied upon. The definition supplied by miss Hicks on expert. Uh, miss Aaron in, in defining what, uh, evaluation is. It's clear that both reports do not meet that requirement. Can I interrupt you a moment, Mr. Cox? Yes, your honor. It would appear that this is such a central question that could have been seen if there was a severance between a shareholder. A minority one and the majority one. And I understand you drafted the contract, right? The agreement. I did not, but our firm did. Uh, Wouldn't it be, uh, foreseeable and necessity to define what we're talking about? Um, When the agreement is draft. Sorry. To define what evaluation means, what we're talking about exactly. Definition of what we're going to be functioning under. Um, In retrospect, I wish it had, I wish it had provided, uh, more guidance in that. So we are left to, uh, Uh, Look for a definition. In this case, the definition was actually supplied. To us by Ms. Hague's attorney. Who, who very clearly defined what that is. And which we, uh, which we adopted in the court adopted as the valuation. Uh, definition. Uh, unfortunately. The neither report by Ms. Aaron met that definition that she supplied in which we adopted in the case. One of the, um, things that. I mean, your. Business valuation includes is the overall market of the business. Uh, the trends of the business. Is that true? Uh,   I don't know. Uh, those are among the things that Ms. Aaron supplied in their definition of what was required. And isn't that how she got down to zero is basically doing that. She did not get to zero. Our, our expert did. Yeah. Yeah. I'm sorry. Your expert Anders took into account the. Uh, overall marketability, the market trends and things like that. Uh, that's my understanding. And it did not happen in the calculation analysis. And one of the important parts of the definition, I would say is that Ms. Aaron supplied is that it provide. It show everything they did. She showed nothing that they did, but rather went back to the original calculation and didn't include any of those things that she said it should include. But. I noticed in your brief that you talked all about. Um, They're experts. Uh, analysis. You spent very little, if any time on your experts analysis. And. Go ahead. Excuse me. I was going to explain why that is in this case. Uh, Ms. Hague has asked that the Anders valuation that we had done. Be used. Uh, as a valuation. They have, uh, ask the court to accept it. And average it with their valuation. So they're not challenging. Uh, the. Ours as a valuation. They're asking the court to accept it as a valuation. But also accept what Ms. Aaron did as evaluation. The board initially rejected that and then accepted it later. Uh, even though it's essentially the same thing. Uh, Ms. Hague has asked that the board accept it as a valuation. And so there hasn't been an issue. Uh, rather with our expert, but rather. A request that the court accept that. As a valuation and average it with Ms. Aaron. Well, maybe I misunderstood. Um, Ms. Hague has asked that the board accept it as a valuation. Uh, zero plus the Anders or the Kemper evaluation would be half. Of what was awarded. Right. That would be correct. So now I'm confused. I thought they did dispute your experts valuation of zero. There were, there were pleadings and documents file in which they did raise questions about it. But ultimately they asked the court to accept it. The very thing they wanted was the court to accept the Anders valuation. And to also accept their vet quote valuation and average them. So the relief they're seeking was to accept ours as evaluation and average it with theirs. And ultimately they did not dispute it, but as support to use it. Well, here's my question about your valuation. Cause it seems that the court. Um, Construed your expert as not being, um, a correct calculation. Is that true? Um, I do not recall the court entering an order that address that your honor, unless I'm mistaken. I don't think that ever happened. Well, that's why I'm confused. If the court accepted your clients at zero and there's. 500 and some odd thousand. Why didn't the court just average them? Well, The next step would have been to do that. In this case, the court found. That our valuation was evaluation. Initially rejected theirs and then later accepted the same thing as evaluation. And, uh, but did not. Order that we pay her. In fact, when you see the last entries, the court made, uh, she specifically said, I am not ruling. On whether or not you have to buy them, in which case it would have been the half, but rather. I'm just ruling that it is a valuation within the meaning of the shareholder agreement. So we never reached that point. So do we have a final order here? No, we don't have a final order. She indicated her order was a final and appealable order. That's all she was called upon to decide. And that's all she did. Just did decide. So the, the pleadings only asked her to make that decision. That's my understanding. Okay. So on your experts, valuation when your expert took into account the markets and things like that. Section 10 seems to say that that should not be done. It says not withstanding any provision to the contrary, no valuation shall take into account. Any discount valuation methods for lack of marketability or minority interests. And it seems that your expert did do that. Am I incorrect about that? Your honor. I would. I my honest answer is I don't know. I would have to go back and analyze his report again. Which I did not do in preparation for argument because I didn't. I understood the parties. Was about their valuation. Not about ours. I'd be happy to do that. But I simply don't know. And I don't want to misstate it. Okay. Thank you. So. If I could continue on here. I think what we look at is the first order. Of the court found that Miss Aaron's calculation analysis simply was not evaluation. In fact, Miss Aaron herself admitted it was not a. Evaluation. It was a calculation analysis. In fact, in the calculation analysis. She said, if we were to do evaluation. It, it would be maybe very, very different, but that's not what she did. The trial court relied upon that statement by Miss Aaron. And noted it in her order. When she rejected the calculation analysis. Then after rejecting it. She gave the court gave permission. Or Miss Haye to get a valuation. And it took almost nine months to do that. And when it came, we expected to see a valuation that was in accord. With the definition supplied by Miss Aaron herself. And which the court accepted. So when we got it and we looked at it, we see that it is. Almost identical. To what was initially. Presented and rejected. And when we look at her definition of it. We see that her definition includes this. The thorough analysis of the industry. Background of the client adjustments to the financial statements for economic reality. And writing a report that lays out everything they did. And what she did for the second report does not meet her own definition. Importantly, it doesn't lay out everything she did. In fact, she makes no mention of the analysis of the industry. No adjustment for financial statements, background of the client. And when I questioned her about that. She said that. She did these things. She claims she did these things, but she did not mention them in the report, even though her own definition requires. That she. Give the full background. So when the report was given. She changed essentially just changed the name of it from. Calling it a compare. A. Calculation. Calling it evaluation, but when you look at it. And we provided the court with a copy of it. Underlining those portions that are the same as the first report and the court will see that it's almost identical. Exhibit A's almost identical. Exhibit B is exactly the same. Exhibit C is exactly the same. The calculations are exactly the same. And the number she arrived at. In the analysis is exactly the same. And she uses a calculation and I've. I've gone through this in my brief. But she uses a calculation that is based on inadequate information. In fact, she admitted. That she didn't have adequate information to even make that. Calculation. So what we're asking the court to do is reject. The second. Well, valuation as being almost identical to the first calculation that was provided. And, and find that it is not evaluation within the meaning of the definition supplied by her own expert. And to order. That the trial court. Find it. It's not. Evaluation rather than calculation. The only. Explanation the trial court gave or changing. The court's mind from. Rejecting the calculation analysis to accepting it set almost exactly the same thing as evaluation was the fact that Ms. Hague. The trial court. Called it evaluation. But a calculation analysis by any other name is still a calculation analysis, which, which Ms. Hague. Eggs expert herself. Rejected. As are accepted as. Not being evaluation. So we have support to reverse. The order of the trial court in fine. It's already decided in the category of the amendments, that it is not evaluation within the meaning of the. Shareholder agreement. Thank you. Thank you. Mr. Cox. I have one other question. You argue that one of the reasons they're expert. In your deposition, you asked her, did you take into account the market? The market. And again, what. What's the relevance of that? Why would she have to do that? If this, this provision in section 10, that says they shouldn't do that. What's the relevancy of you asking her to do that? If there's a. A provision that says, don't do that. I don't know. The relevance of it was that. That. That was part of her definition. When you look at how she defined it. And she looked at the industry. And, and the other issues that would have been, we felt subsumed within the definition that she had given. And so that's why I asked her about it. Because she defined it that way. Thank you, your honor. Thank you council. Hey, the appellee. May proceed. Good afternoon. My name is Don Prosser. I'm here with my co-counsel, Rhett Barkey. And we represent Kimberlin Hague. Was the shareholder of. Apparel services by extra help. The issue before the court as framed by the appellant is. Did the circuit court or. And commit an error by finding that a. Valuation issued by Kemper's CPA group. In November of 2018. Failed to comply with the requirements of section 10 of the shareholder agreement. We believe that it's absolutely clear that the decision of the circuit court was correct. Both on the basis of Illinois law and also on what evidence was before the circuit court. Before I address some of the issues of, uh, that I intended to. I want to respond to a couple of things that came up in the questioning by the bench. First of all, in response to the justice case request. About business valuation and the like. We definitely do have a fundamental difference with the. With payroll services. We think section 10 defines what is necessary. It was as a. As a. Was said it was drafted by payroll services lawyers. And what it says is, is that. Give us a valuation by evaluation company. And then we'll average it with the other evaluation and come to a purchase price. There's nothing about language about business valuation or as we'll get into in a moment. Uh, engagement, uh, for a valuation engagement as defined by the AI CPA. Nothing in there about calculation engagements or the like. It just simply says. The value. That you're an expert determines is the fair value for a fair market value. Of these shares. And so there is a fundamental difference with that. Let me begin with that. In regard to your question, justice, uh, Kate's about, uh, whether or not. We were waiting to hear what, uh, uh, The Anders valuation was before we decided what to do. It's just. Counsel's just wrong. And I raised this with him in the brief. I'm surprised. He didn't go back and become prepared with it by the pleadings itself. It says. Before the court. And I draw the court's attention to page four of my brief where we sign paragraph 11 of the verified counter complaint. Where we said, Hey, notify. Payroll services that they would not agree to Anders to serve as a mutually agreed upon valuation company. And further than they would be using Kemper CPA group for their valuation. And that reallocation. Which state was done in May of 2000. Uh, uh, 14.  That complaint was admitted by counsel on page on the record. See 88. So there's absolutely no dispute that in fact, we didn't wait to see what his reports were. We were already suspicious that it would not be something we agreed with. We hired our own expert and they were fully informed of it. Before we ever got any further on it. The report prepared by Anders didn't come in until July. So this was a more than a month before. This happened. Now. I think that we must begin with a construction of a contract by looking to the words. Like cases of this and the Supreme court or legion, that the words of a contract are the best indication. Of what the parties met and intended. Now, what are the words as counsel admitted to you just a few moments ago, the word is valuation. Now, what is the definition of the word valuation? Well, the plain and ordinary meaning of the word valuation is the process of valuing something. Often done by an appraiser. That's the definition we cite to you from random house, as well as the new, new Oxford dictionary, American dictionary. Both of which. Say that. Is it a valuation? Is it a done by an appraiser? Well, it clearly is. There isn't any dispute about that at all. So if we look at the language of the contract, The clear indication is that the plaintiffs, that the decision of the circuit court was correct. What does counsel say in response to that? Well, it's not a defined term. Well, that makes it even harder for him to overcome that ordinary plain, ordinary definition, because the case law is including this own court. Decision in the hunt versus a hunt case is that you, when you don't define a term, you use the plain and ordinary meaning of the thing, unless there is extrinsic evidence to show. Otherwise counsel said in his brief that extrinsic evidence would be admissible. He's absolutely right, but he didn't do that. The trial doesn't have any evidence of any extrinsic evidence that said that the parties had some special understanding, some private or personal or in agreement between themselves about what the word valuation would mean. There's an indication of that. They drafted it, but they didn't come up with anything to tell you that there would be anything different than the plain ordinary meaning of the word. What also is missing is there's no evidence to indicate that there's any customary definition within the industry that these parties were practicing, which is payroll leasing, leasing employees to other customers of payroll services. There's no customary definition that the parties would have been presumed to be assuming to use. But what does counsel say in response? Well, okay, there's no definition. Why don't we go to what the AICPA would use? And Justice Cates asked the question, well, is there an agreement that the AICPA was incorporated into this contract? And counsel said, well, I'm not sure. And the reason he's not sure is that it's not the case. No one ever said in this contract that only accountants could value this interest. They could have. Defined what industry would be used for a valuation company, but they did not. Presumably they could have gone and talked to somebody at Wells Fargo or some other investment company and offered an opinion about it. There's no standard as to who this is. The only qualification in the contract is it must be a company engaged in the business of valuing companies. Well, having said that. Counsel says, well, still it is. They did both use accountants and that's true. So what if we did that? What if we ignored the fact that the contract is silent about that? And just assume that the definition of valuation. In this contract is what accountants use when they use the word evaluation. Well, if we do that again, The plaintiff's lose because the glossary definition of valuation, which is included in the very standards that counsel tries to slip into the court. In this manner without any author is any explanation as to why it becomes into it. But even if we rely on it, they say the word valuation as used by accountants is valuing a business or a business interest. It's no different than the plain ordinary meaning of the word. So counsel just. His case just falls apart on that. And we honestly believe that that should be dispositive of the case, but let me go further and deal with some of the issues that he's raised both in his brief and in this court. Now I want to begin by saying that a great deal of the problem we have here is the use by lawyers of terminology. That is not legal terminology. Counsel ask an expert witness in this case, Ms. Aaron's tell me about the definition of evaluation engagement and the difference between it and a calculation engagement. And she starts to explain it. And she says, well, either one of them are acceptable valuation efforts by accountants, but they have different expectations under the standards of my profession. As he elaborates on it, she keeps referring to evaluation engagement as a full blown business evaluation or a full blown evaluation. And counsel persuaded the court in the first hearing to say, well, this is a lesser standard of examination. This calculation that was done in 2014. And surely the parties are entitled to more than just this calculation valuation. It should be the higher standard. The trial court agreed with that and said, well, I don't think that a calculation analysis is enough. If you want to offer an engagement evaluation engagement as AIC, AICPA would require, I will consider it. That was done in 2018. And what is the difference between the two approaches? Well, you can't write evaluation engagement under AICP, AICPA standards without an extensive evaluation of lots of material. And she did that. And counsel knows that she did it because he asked her about it in the deposition. And I will tell you that these are the kinds of things that counsel asked about, asked Ms. Aarons about, did you do this? She asked her, did you consider, have additional inquiries with Hagan and about payroll services and business operations? Answered was, she did. Did counsel ask her, did she research the general economic conditions in the relevant time period for valuation? She said she did. Did counsel ask her about, did she conduct industry research in Kemper's proprietary subscription services and the online research of payroll services and its management? And again, Ms. Aarons said, yes, I did. And then counsel said, well, what about, did you conduct an analysis of employee leasing industry and its economics? She said, I see that as well. Did you consider the, and determine the book value of the businesses? She said, I did. She asked her, did you conduct a comparative analysis, the company over periods of examination preceding the valuation date? She said, I did that too. And then he said, and did you analyze the company data and industry data available in publicly available media, as well as Kemper's proprietary database? And she said, I did all that. So then counsel said, well, why is that? Why are you using the same number in 2018 as you did in 2014? And her answer was, but counsel just doesn't want to accept this. She said, everything I did only confirmed my earlier opinion as to the appropriate way to value this, these shares. Look to see what this company did when it bought some of the companies that it acquired in 2013. And using that formula of 2.5 times the computed earnings of the business, she felt that was appropriate in 2014. And after all this additional analysis, she found all of that reconfirmed. I can read you to the sections of the brief where she said that if you, if you have any question about it, but the bottom line is, is the reason the numbers are not different is that the report is the same in 2014.  the reason the numbers are different is because it's not a calculation, not an evaluation engagement, but because that's the methodology she thought was appropriate. Now counsel makes a serious point here, but I think an erroneous one, when he says, well, it doesn't have all this discussed in the record. Now, what he should have said, if that were meaningful, is to say, that's not what was required by the contract. Let's look to section 10 of the shareholder agreement. Does it comply with what was required there? And the reason he didn't do that is because there's no requirement in the section 10 of the shareholder agreement to report how a valuation company comes to its number. There's no value, no requirement in the contract to say what you considered, but did not ultimately find persuasive. Doesn't require in the contract to tell us anything about how they reached that conclusion. Only we rely on their professionalism to come up with a number that is consistent with, I guess, the fair judgment of that professional. It doesn't look to the contract at all. Yes, ma'am. I'm sorry. The judge did reject your experts first report. And I'm not sure what changed the judge's mind was, do you think it was the discovery deposition where the expert had the opportunity to explain more about what she did? Because it does seem odd that the court would reject this analysis at the get-go. A fair question. Let me see if I can address it as best I can judge. I think the 2017 order of the court is, where she rejected the 2014 valuation presented by Kemper, which was a calculation analysis. She didn't reject it, I think, because it was a calculation analysis, but because according to the witness, witness Aaron, this was a lesser standard of research and requirement. And there would have been a higher one available to her, which would have been the evaluation engagement or a full blown evaluation, which is the way she used the term. And I think the court was concerned that perhaps by using something less than the most complete possible analysis or most expected, most rigorous analysis, it may be the best way to put it, but perhaps that would somehow compromise the rights of payroll services. So I think that's the reason she rejected that, that decision, that order judge. And upon review, when Aaron's comes forward and says, I've given you a report and my company says it is a valuation engagement, which is the highest level of rigor available under and required under the AI CPA. Now it's incumbent, if council wants to challenge it to show why it's not that. Now, let me just say to you that there is no evidence, absolutely no opinion offered in this case by Mr. Morehouse, by anyone saying that what the Kemper report of 2018 is not evaluation engagement. There is the testimony, repeated testimony of Ms. Aaron's under the examination of Mr. Cox, where she says it is that, and she explains it. So for that reason, I think the court really did the right thing when she, when it said in 2018, regardless of whether or not the court would have been beyond its authority and saying that the 2014 contract did not meet the contract. This one clearly does by any standard because it's the highest standard there is, at least within that profession. I just want to make sure I understand from you what Mr. Cox said, and that is if the court grants the relief you want, that is affirming the trial court, then you believe that the case is over. You just averaged the zero and this number and you, the pardons are done. Well, I would have hoped that the judge would have just gone ahead and done that, but she read the, the pleadings of the declaratory judgment to say, all I've asked to do is value is determine whether these two valuations are confined and compliant with a section 10. And as she did that, she left unresolved that issue. Now to answer your question as directly as I can, assuming this court affirms the decision of the circuit court, which is I think the appropriate result, then presumably payroll services will pay this money. If it doesn't, then we'll be, we'll be back in another court demanding enforcement of that order. But that isn't been, that's not been decided. That's my question. And I'm, I'm a little worried about jurisdiction now that you two are arguing. When you say you're, you assume that the payroll services will pay this money, which, which, what is this money mean? It would be the, the average of the average devaluation and the Kemper 29, 2018 valuation judge, which would be what $70,000 or something like that. So the averaging is not in dispute. Well, I think that's a matter of math. I don't think there should be an issue about that. You just put them together, divide by two. So I don't think there's any problem with that, but the issue really comes down to the final thing that council says. And he just, it's a Paul appalling to me that he doesn't deal with this issue. He wants to say, well, there's nothing in the record about what that she did these things. So that's not true. He asked these questions. It is in the record that she did it. Well, he says, but it's not included in the report. It's not in more houses report either. It's not in her report because the AICP standard number 50 says there's no requirement for reporting for, for valuations that are gendered for report of litigation. And that's it. In fact, I'd refer the court to page five 51 of the record. This is where more houses answering my questions. And I asked him, are there certain expectations of what a report of evaluation engagement would include? And his response is, well, the reporting requirements are waived for litigation purposes under S S V S. So if I could expand a little bit, there is a valuation engagement and there is a calculation, some discussion about that. Then on the next page, he says, this is on page five 52. It can start in five 51, continue to five 52. If you read S V S S, it states clearly that there is a report writing exception. If you're in litigation and both he and Aaron's agreed with that and both he and Aaron's relied on that for their reasoning, not to have pages and pages of discussion about things that they didn't ultimately rely upon. They did the investigation, but they didn't rely on it. He knows better. I think if he doesn't, he needs to reread reread the standards because they are clear. There is no standard requirement on the AS AI CPA. And there's certainly no standard under this contract. If I might summarize, we think the language of the contract controls here. The language says, is it evaluation? Well, it clearly is. It meets the test of the plain and ordinary meaning of the words. It even meets the test evaluation is used by accountants. Since it meets those standards, that should be the end of this discussion. It is determinative and all the objections of council are frankly without merit. We urge you to affirm the decision of the lower court. Thank you. Council rebuttal. Thank you. Thank you. Just a few comments. Let me first address the issue of whether. Whether they agreed that Anders could perform it. On page six, it's laid out. In an email from Mr. Barkey. In may. 12. In which he says I've spoken to my client regarding the valuation. At this time, she would like to proceed with the Anders. Anders performing the evaluation. And it's all receiving the information provided. To Anders for their use and evaluation. And then he says upon receiving the valuation numbers, my client will advise as to whether she believes that numbers are correct and agreeable or accurate and agreeable. And if they're not agreeable, then she would get a Kemper. That's what we understood. And that's what happened. We got the Anders report. She disagreed. She got a Kemper report. Mr. Cox. There was a letter of may 2014. Maybe you didn't receive it, but there is a letter saying that they're going to go ahead and get Kemper. Right. That was after the email. After this email, that's where they looked at. Your client knew that there was going to be a second report prior to giving the report. Yeah, that's sure. That's for that's exactly right. After this email, they looked at, they decided that they were just going to go ahead and get Kemper. But initially they agreed that Anders. Could per could perform it and they did. And then they disagreed and wanted their own and that's fine. And what's the, How does that relate to our defining valuation in this case? Isn't that what you're asking this court to do? Yeah, I don't, I don't think it's an issue that goes to the ultimate question of whether they agreed or didn't agree. We know they didn't agree and they got the role, but what they got. Was a calculation analysis, which their own expert admitted was not a valuation. That's clearly stated by their own expert. And so we don't have to guess at what the definition is thrown expert defined. A calculation analysis does not include all the valuation procedures required for evaluation analysis. That's on page seven of our brief holding miss Aaron. She admitted that her calculation analysis did not meet the qualifications of her definition for a valuation. So she was, she defined value at what evaluation is. And part of that was that writing the report. That is evaluation must set out everything they did. She's in. I never said there wasn't anything in the record about what she did. What I said, there is nothing in the report about what she did in her own definition requires that she lay out what she did. I'll give you an example. She says that she did a comparative analysis. That was her testimony, comparative analysis of the company over time. When I asked her if she ever wrote that down any place, she said, no, I just did it in my head, but she put nothing in the report about that or anything else. She said was required to be in the report background of the client analysis of the industry. While she said she did it, it's simply not there. In other words, why, why shouldn't we believe her? I mean, did you offer an expert? To challenge her testimony? Don't we have unrebutted testimony now from her? I mean, you're going after her credibility. I understand, but there's nothing that really challenges her, her report. We do challenge her report in that it does, even though she says she did it. And even if she did it, we don't have any evidence of her doing it, nor do we have any of that in the report, which she says was a requirement of the valuation. So when you look at her testimony, it's incomplete and it certainly doesn't meet the definition. I need to ask you one question about the pleadings. The pleading that you originally filed was a declaratory judgment action. In your brief, when you look at the standard of review, you talk about summary judgment. My question is what do you believe the standard of review is in this case? Since you filed a deck action, do you think it's the same? Summary judgment, but you're pleading as a deck action. I just want to make sure I understand what you think the standard of review is by this court. As I indicated in the brief, we believe the standard of review is de novo because it's a, it's a issue regarding some of the granting of a summary judgment. And, and so I believe it, I believe it is de novo. Okay. Thank you. Yes, Your Honor. My time is over. Thank you all. Thank you, counsel. Case will be taken under advisement. You'll be excused. Thank you.